IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of: | ) | No. 41024-2-III |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| R.M.[†] | ) | |
| | ) | |

LAWRENCE-BERREY, J. — On appeal, R.M. challenges an order dismissing her 14-day involuntary commitment. She argues that commitment orders that are dismissed following an individual's release from the treatment center do not maintain continuing validity under chapter 71.05 RCW. For this reason, she claims the trial court erred by failing to note in its order that the dismissed commitment order could no longer be used against her in future commitment proceedings under chapter 71.05 RCW.

We decline to address her argument because she failed to raise it below, and she fails to argue that her unpreserved claim of error satisfies an exception to the error preservation rule.

---

[†] To protect the privacy interests of R.M., we use her initials throughout this opinion. Gen. Ord. for Ct. of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

FACTS

On February 9, 2025, R.M. reported she had overdosed on old prescription medication in a suicide attempt. R.M. was transported to Pullman Regional Medical Center and had to be physically and chemically restrained. A designated crisis responder subsequently filed a petition for initial detention, and R.M. was placed on emergency detention at the Foothills Evaluation and Treatment Center.

On February 13, two medical professionals filed a petition to involuntarily commit R.M. for an additional 14 days. The following day, the trial court held a probable cause hearing. One of the physicians who filed the petition testified that over a period of seven weeks, R.M. visited an emergency department 6 times for psychiatric reasons, called the crisis line 23 times, made multiple suicidal statements, and took a knife into a police station declaring she was going to commit suicide by cop. This culminated with her reported overdose and subsequent emergency detention. The physician also testified that during R.M.'s emergency detention, she refused to take medication, was agitated and aggressive, and struck medical staff.

R.M. testified and disputed she had made multiple suicidal statements or called the crisis line 23 times. R.M. also disputed that she refused to take medication but instead claimed the treatment staff never offered her medication.

The trial court granted the petition, finding R.M. gravely disabled. Ten days into her commitment, R.M. filed a notice of appeal of the commitment order. After R.M. filed the notice of appeal, the State moved under CR 41 to voluntarily dismiss the commitment order. R.M. agreed to dismiss the order. The trial court granted the State's request on March 4, 2025, and backdated the dismissal order to February 26, 2025—12 days into R.M.'s 14-day commitment.

## ANALYSIS

### CHAPTER 71.05 RCW PROCEEDINGS AND PAST INVOLUNTARY COMMITMENTS

R.M. argues the trial court erred by failing to state in its dismissal order that the voluntarily dismissed 14-day commitment order could not be used in future commitment proceedings against her. The State makes several arguments in reply; we will address each in turn. But first, we introduce chapter 71.05 RCW civil commitments.

*Chapter 71.05 RCW civil commitments*

The "Involuntary Treatment Act" (ITA) aims to protect the health and safety of individuals with behavioral health disorders, safeguard the public, prevent inappropriate indefinite commitment, eliminate legal disabilities from commitment, and ensure prompt evaluation and treatment for those with serious behavioral health disorders. RCW 71.05.010(1)(a)-(c).

3

If a designated crisis responder is informed that a person may be gravely disabled[1] because of a behavior health disorder, the responder may file an initial detention petition, after conducting an evaluation, to hold that person for no more than 120 hours. RCW 71.05.150(1), (2)(a). When a designated crisis responder or professional conducts an evaluation under chapter 71.05 RCW, they must consider prior ITA commitments among other relevant information. RCW 71.05.212(1)(d).

After a person is held for 120 hours, the professional staff at the detention facility may petition to commit the gravely disabled person for an additional 14 days of involuntary intensive treatment. RCW 71.05.230(1). If a 14-day involuntary commitment petition is filed, the court must hold a probable cause hearing and determine whether, by a preponderance of the evidence, the person is gravely disabled or presents a likelihood of serious harm.[2] RCW 71.05.240(4)(a). When the court determines if a

---

[1] "'Gravely disabled' means a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." RCW 71.05.020(25).

[2] "'Likelihood of serious harm' means: (a) A substantial risk that: (i) Physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or

person is gravely disabled, the court must consider whether the current symptoms or

behavior is like preceding behavior that led to a previous involuntary hospitalization.

RCW 71.05.245(2). Additionally, to determine whether the person presents a likelihood

of serious harm, the court must give great weight to evidence that a person was

previously committed based on a likelihood of serious harm. RCW 71.05.245(3).

If the court finds the person gravely disabled or presents a likelihood of

serious harm, it must detain them for involuntary treatment for no more than 14 days.

RCW 71.05.240(4)(a). If the professional staff at the detention facility still believe

additional treatment is necessary after 14 days, they may petition for an additional period

of either 90 days of less restrictive alternative treatment or 90 days of involuntary

intensive treatment. RCW 71.05.280, .290, .320(1), (2).

A 14-day involuntary intensive treatment commitment could be terminated sooner

and the person released, if a professional at the treatment facility believes the person is no

longer gravely disabled. RCW 71.05.260(1). "Release" means legal termination of the

commitment under the provisions of chapter 71.05 RCW. RCW 71.05.020(49).

---

(iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or
(b) The person has threatened the physical safety of another and has a history of one or more violent acts." RCW 71.05.020(37).

5

R.M. was initially held for up to 120 hours at a treatment facility when a physician believed she needed another 14-day involuntary commitment. The trial court granted the 14-day involuntary commitment petition because it found R.M. gravely disabled. Twelve days into R.M.'s involuntary commitment, the State requested to dismiss the commitment order and the trial court granted its request.

We now address the State's procedural arguments for why we should not review R.M.'s claim.

*A. Invited error*

The State first argues that R.M. invited the error because she agreed to the dismissal order and did not request that the court include the language she now seeks to be included in the dismissal order. We disagree.

Under the invited error doctrine, a party cannot materially contribute to a legal error and then challenge that error on appeal. *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 774, 320 P.3d 77 (2013). "The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal." *Id.* Here, R.M. did not take any affirmative action that contributed to the lack of the language she now seeks to have added.

*B. RAP 2.2(a)(1) or RAP 2.3*

The State also argues we should not review R.M.'s argument because she brought the appeal pursuant to RAP 2.2(a)(1), and she cannot satisfy RAP 2.3. We disagree.

RAP 2.2 identifies superior court decisions that may be appealed as a matter of right. One of those decisions, the one that R.M. identified in her notice of appeal, is a "final judgment entered in any action or proceeding." RAP 2.2(a)(1). If an appellant cannot satisfy RAP 2.2's requirements, they may seek discretionary review of any superior court act. RAP 2.3(a).

Citing *Carrara, LLC v. Ron & E Enterprises, Inc.*, 137 Wn. App. 822, 826, 155 P.3d 161 (2007), the State argues that appeals under RAP 2.2(a)(1) should come from the judgment on the merits. The State points out that R.M. did not challenge the dismissal order or the underlying commitment order. The State argues that without an appeal from the merits of the final judgment, any controversy, or order of commitment that judgment is based on, we may refuse to review the appeal.

However, the facts in *Carrara* are inapposite here. *Carrara* involved a plaintiff against whom the trial court granted summary judgment. 137 Wn. App. at 824. The plaintiff filed an untimely notice of appeal of the summary judgment order. *Id*. at 824-25. The plaintiff also appealed the award of attorney fees. *Id*. The respondent moved to

dismiss the appeal because the summary judgment appeal was untimely. *Id*. at 825. On review, the appellate court determined the appeal of the summary judgment was untimely, but the attorney fee appeal was not because attorney fees are governed by RAP 2.4(b). *Id*. at 826.

R.M.'s notice of appeal was not untimely. Regardless, contrary to the State's assertions, she is appealing the merits of the dismissal by arguing it did not contain proper language.

C. *RAP 2.5(a)*

The State also argues that R.M. failed to preserve the claimed error she now asks us to correct by raising her current argument to the trial court. We agree.

We may refuse to review a claim of error that the trial court, if given the opportunity, may have been able to correct. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). However, we will review certain claims of unpreserved error. Those claims are defined by RAP 2.5(a), and are (1) lack of trial court jurisdiction, (2) failure to establish facts on which relief can be granted, and (3) manifest error affecting a constitutional right. R.M. fails to argue that any of these exceptions apply. We therefore will not review her claim. *State v. Frieday*, 33 Wn. App. 2d 719, 744, 565 P.3d 139, *review denied*, 5 Wn.3d 1006 (2025), *cert. denied*, 146 S. Ct. 1609 (2026).

No. 41024-2-III
*In re Detention of R.M.*


Deny review of claimed error.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:


_____        _____
Murphy, J.                                Hill, J.